```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION


ANTHONY FRAZER, Personal         §
Representative for the           §
ESTATE OF EMMANUEL FRAZER,       §
                                 §
           Plaintiff,            §
                                 §   CIVIL ACTION NO. H-05-3109
v.                               §
                                 §
CHICAGO BRIDGE AND IRON,         §
                                 §
           Defendant.            §
```

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anthony Frazer, Personal Representative for the Estate of Emmanuel Frazer, brings this action for negligence and negligence per se against defendant, Chicago Bridge and Iron (CBI). Pending before the court is CBI Company Ltd.'s (Improperly Named as Chicago Bridge and Iron) Motion for Summary Judgment (Docket Entry No. 13). For the following reasons CBI's motion for summary judgment will be granted.

### I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The

Supreme Court has interpreted Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S.Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## II. Analysis

CBI argues that it is entitled to summary judgment because plaintiff's claims are barred by the Texas statute of limitations, Texas Civil Practices & Remedies Code §§ 16.003-16.004.[1] Plaintiff argues that his claims are not time barred because they are

---

[1]CBI Company Ltd.'s (Improperly Named as Chicago Bridge and Iron) Motion for Summary Judgment (Docket Entry No. 13), pp. 4-6.

-2-

governed by the 10-year limitations period provided by the Alien Tort Statute (ATS), 28 U.S.C. § 1350.[2]

### A. Plaintiff's Allegations

Plaintiff alleges that Emmanuel Frazer was employed as a welder/carpenter by Canillion Caribbean United on a job site in Trinidad and Tobago, West Indies, managed by CBI. Plaintiff alleges that CBI, pushing to complete the job on time, required employees, including Emmanuel Frazer, to work at night on a rickety scaffold without a safety engineer on site. Plaintiff alleges that on September 6, 2001, Emmanuel Frazer fell to his death from a scaffold when a crane operator hit the scaffold with a cement shutter.[3] Plaintiff also alleges that the United States, as well as Trinidad and Tobago, are treaty members of the Organization of American States (OAS), which has adopted principles of labor relations, standards, and working conditions that apply to CBI.[4]

### B. Procedural Background

On March 19, 2003, plaintiff filed claims for negligence and negligence per se against CBI in the United States District Court

---

[2]Response to the Defense Motion for Summary Judgment, Docket Entry No. 14, pp. 3-7.

[3]Plaintiff, Anthony Frazer's, Personal Representative for the Estate of Emmanuel Frazer Amended Complaint (Docket Entry No. 3), pp. 2-3.

[4]Id. at p. 2.

-3-

for the Southern District of Florida (Florida action).[5]  On October 29, 2004, the Florida action was dismissed without prejudice for lack of personal jurisdiction.[6]  On September 6, 2005, plaintiff asserted claims for negligence and negligence per se against CBI in the Original Complaint filed in this action (Docket Entry No. 1).  On November 3, 2005, plaintiff filed an Amended Complaint in which he identifies himself as the personal representative for the estate of Emmanuel Frazer and as a citizen of Trinidad and Tobago, West Indies (Docket Entry No. 3).

**C.   Defendant's Motion for Summary Judgment**

    1.   Arguments of the Parties

        (a)  CBI's Limitations Argument

On February 6, 2006, CBI filed a Motion for Summary Judgment (Docket Entry No. 13) arguing that plaintiff's claims are barred by limitations.[7]  Citing Texas Civil Practices & Remedies Code § 16.064, CBI argues that this action is time barred because the claims asserted in this action are the same as those asserted in the Florida action, and plaintiff failed to file this action within sixty days following dismissal of the Florida action.  Asserting

---

[5]See Complaint, Exhibit B1 attached to CBI's Motion for Summary Judgment, Docket Entry No. 13.

[6]See Order, Exhibit B3 attached to CBI's Motion for Summary Judgment, Docket Entry No. 13.

[7]CBI's Motion for Summary Judgment, Docket Entry No. 13, pp. 4-6.

that plaintiff "would have had to file his second lawsuit . . . by April 29, 2005, at the latest,"[8] CBI argues that this action is time barred because it was not filed until "some twelve months after the Florida litigation was dismissed."[9]  Asserting that plaintiff is required to exercise due diligence in pursuing his claims, CBI also argues that equitable tolling is not applicable in this case.[10]

        (b)   Plaintiff's Response in Reliance on the ATS

Plaintiff does not dispute either that the claims asserted in this action are the same as those asserted in the Florida action or that his claims are barred by the applicable Texas statute of limitations.  Instead, plaintiff asserts that the Florida action was transferred to this court "as requested by the defendants,"[11] and that CBI "fails to respect that the claim is brought under the [ATS] 28 U.S.C. 1350. . . [t]he Statute of Limitation [for which] . . . is 10 years, as . . . adopted from analogous Torture Victim's Protection Act."[12]  Plaintiff also argues that

> because of the United States treaties, particularly the Organizations of American States, [CBI] is held to the same labor standards in all member states.  As stated in

---

[8] Id. at p. 6.

[9] Id.

[10] Id.

[11] Response to Motion for Summary Judgment, Docket Entry No. 14, p. 3.

[12] Id.

L. R. Willson & Sons v. Donovan, 685 F.2d 664 (D.C. Cir. 1982), the employer has an affirmative duty to provide a safe work place and to comply with Occupational Safety and Health Administration's standards.[13]

(c)  CBI's Reply

Citing the Order entered by the Florida court, CBI argues that the Florida court dismissed, and did not transfer to this court, plaintiff's first attempt to assert claims against it for negligence and negligence per se arising from the death of Emmanuel Frazer.[14] Citing Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 167 (5th Cir. 1999), CBI argues that the ATS is inapplicable to the facts alleged in this action because it "applies only to shockingly egregious violations of universally recognized principles of international law."[15]

2.  Discussion

Although plaintiff argues that the Florida court transferred that action to this court, the Order entered by that court expressly states that the court's analysis "results in the conclusion that personal jurisdiction may not be exercised over [CBI] in accord with the Due Process clause of the Fourteenth

---

[13] Id. at pp. 6-7.

[14] CBI Company Ltd.'s (Improperly Named as Chicago Bridge and Iron) Reply to Plaintiff's Response to Respondent's Motion for Summary Judgment, Docket Entry No. 15, pp. 2-3.

[15] Id. at pp. 3-5.

Amendment,"[16] and expressly orders that "the above-styled cause be and the same is hereby DISMISSED without prejudice."[17] The clerk's file in this case reflects that plaintiff initiated this action on September 6, 2005, by filing an original complaint and paying a filing fee. Accordingly the court concludes that plaintiff's argument that the Florida court transferred his action to this court has no merit.

(a) Texas Civil Practices & Remedies Code

Section 16.003(b) of the Texas Civil Practices & Remedies Code provides that a cause of action for injury resulting in death must be brought no later than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.003(b). Section 16.064 of the Texas Civil Practices & Remedies Code provides plaintiffs a grace period of sixty days following dismissal for lack of jurisdiction to file their actions in a court of proper jurisdiction. See Tex. Civ. Prac. & Rem. Code § 16.004. See also Matter of Paso del Norte Oil Co., 755 F.2d 421, 426 n.7 (5th Cir. 1985) ("Under Texas law, the filing of an action that is dismissed, even by a federal court, for want of jurisdiction tolls the running of the applicable statute of limitations.").

Plaintiff filed his first action in Florida on March 19, 2003, less than six months before limitations would have expired on

---

[16]Order, Exhibit B3 attached to CBI's Motion for Summary Judgment, Docket Entry No. 13, p. 7.

[17]Id.

September 6, 2003, two years after the death of Emmanuel Frazer on September 6, 2001.  Tex. Civ. Prac. & Rem. Code § 16.003.  On October 29, 2004, the Florida court dismissed plaintiff's action for lack of personal jurisdiction.[18]  In order for the "savings clause" provided by Texas Civil Practices & Remedies Code § 16.004 to protect plaintiff from the running of limitations while his action was pending in Florida, plaintiff had to file this second action within sixty days of the date the Florida court's dismissal became final.  Since September 6, 2005, the date that plaintiff filed this action, is more than sixty days after October 29, 2004, the date the Florida court dismissed his first action, the court concludes that this action is time barred under Texas law.

      (b)  Alien Tort Statute

The ATS is a jurisdictional statue that provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.  The ATS does not contain an express limitations period.  Without disputing plaintiff's assertion that the limitations period for ATS claims is ten years, CBI argues that the ATS is inapplicable to plaintiff's claims.  See Papa v. United States, 281

---

[18] See Order, Exhibit B3 attached to CBI's Motion for Summary Judgment, Docket Entry No. 13, pp. 6-7 (concluding that "personal jurisdiction may not be exercised over [CBI] in accord with the Due Process clause of the Fourteenth Amendment").

F.3d 1004, 1012-1013 (9th Cir. 2002) (ATS implicitly shares ten-year limitations period provided by the Terrorist Victim's Protection Act of 1991); Doe v. Islamic Salvation Front, 257 F.Supp.2d 115, 118-119 (D.D.C. 2003) (same).  The ATS "confers subject matter jurisdiction when the following conditions are met: (1) an alien sues, (2) for a tort, (3) that was committed in violation of the 'law of nations' or a treaty of the United States."  Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164-165 (5th Cir. 1999) (citing Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995)).  Since CBI has not challenged plaintiff's allegations that he is a citizen and resident of Trinidad and Tobago, West Indies, and since plaintiff has asserted claims for negligence and negligence per se, he has satisfied the first two criteria.  The issue before the court is whether plaintiff has submitted evidence that he is entitled to relief under either the "law of nations," i.e., international law, or a treaty of the United States.

(i)   ATS Standard of Review

The ATS bestows subject matter jurisdiction only to claims for torts that have been committed in violation of the law of nations as recognized at common law.  See Sosa v. Alvarez-Machain, 124 S.Ct. 2739, 2755 (2004).  Observing that when the ATS was enacted the law of nations comprised two principal elements, "the first covering the general norms governing the behavior of nation states

with each other[, . . . and the second] a body of judge-made law regulating the conduct of individuals situated outside domestic boundaries and consequently carrying an international savor," id. at 2756, the Court stated that "[t]here was, finally, a sphere in which these rules binding individuals for the benefit of other individuals overlapped the norms of state relationships," id., and that this sphere encompassed three specific offenses "addressed by the criminal law of England:  violation of safe conducts, infringement of the rights of ambassadors, and piracy." Id. Recognizing that "despite considerable scholarly attention," Congressional intent for enacting the ATS has "proven elusive," id. at 2759, the Court concluded that "the ATS was meant to underwrite litigation of a narrow set of common law actions derived from the law of nations," id. at 2759, and that "courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the [three] 18th-century paradigms [i.e., violation of safe conducts, infringement of the rights of ambassadors, and piracy]." Id. at 2761-2762.

The Court also concluded that "[t]his limit upon judicial recognition is generally consistent with the reasoning of many of the courts and judges who faced the issue before it reached this Court." Id. at 2765-2766 (citing Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2d Cir. 1980) ("for purposes of civil liability, the

torturer has become like the pirate and slave trader before him hostis humani generis, an enemy of all mankind"); Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 781 (D.C. Cir. 1984), cert. denied, 105 S.Ct. 1354 (1985) (Edwards, J. concurring) (suggesting that the limits of the ATS's reach be defined by "a handful of heinous actions—each of which violates definable, universal and obligatory norms"); In re Estate of Ferdinand Marcos, Human Rights Litigation, 25 F.3d 1467, 1475 (9th Cir. 1994), cert. denied, 115 S.Ct. 934 (1995) ("Actionable violations of international law must be of a norm that is specific, universal, and obligatory")). See also Beanal, 197 F.3d at 167 ("the ATS 'applies only to shockingly egregious violations of universally recognized principles of international law'") (quoting Zapata v. Quinn, 707 F.2d 691, 692 (2d Cir. 1983) (per curiam).

> Plaintiff's negligence and negligence per se claims
>
> must be gauged against the current state of international law, looking to those sources [the Supreme Court has] long, albeit cautiously, recognized
>
>> "[W]here there is no treaty, and no controlling executive or legislative act or judicial decision, resort must be had to the customs and usages of civilized nations; and, as evidence of these, to the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat. Such works are resorted to by judicial tribunals, not for the speculations of their authors concerning what the law ought to be, but for trustworthy evidence of what the law really is."

Id. at 2766-2767 (quoting The Paquete Habana, 20 S.Ct. 290, 299 (1900).

In addition, "the determination whether a norm is sufficiently definite to support a cause of action should (and, indeed, inevitably must) involve an element of judgment about the practical consequences of making that cause available to litigants in the federal courts." Id. at 2766. "A related consideration is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." Id. at n.20 (citing Tel Oren, 726 F.2d at 791-794 (insufficient consensus in 1984 that torture by private actors violates international law), and Kadic, 70 F.3d at 239-242 (sufficient consensus in 1995 that genocide by private actors violates international law)). These requirements and considerations are fatal to plaintiff's assertion that the ATS governs his claims. See Sosa, 124 S.Ct. at 2764 (urging "great caution" in adapting the law of nations to private rights), and 2762-2769 (rejecting Mexican national's assertion that claim for abduction and transport to the United States to face prosecution is cognizable under the ATS).

### (ii) Application of ATS Standard of Review

Plaintiff alleges

> 7. That Trinidad and Tobago is a treaty member of the Organization of American States as well as the United States of America, which adopted and laid down principles of labor relations, standards and fair working

> conditions. See Article 31 and Chapter VIII of the Organization of American States.
>
> . . .
>
> 26. That [CBI] violated Occupational Safety and Health Administration standards when it allowed its dangerous construction site to operate without a safety engineer.
>
> 27. The Occupational Safety and Health Administration standards of both the United States of America and Trinidad and Tobago were violated, in addition, the Charter of the Organization of American States standards were violated for financial convenience and as a result two men died, one of which was Emmanuel Frazer.
>
> . . .
>
> 29. The same occupational safety standards applied in the United States to its American companies should apply to the American companies when operations in member states of Organization of American States.
>
> 30. Therefore, [CBI's] intentional failure to meet the international labor standards set by the United States of America and the Organization of American States is the direct cause of death of Emmanuel Frazer.[19]

Citing Willson, 685 F.2d at 664, a case in which the court considered standards for protecting construction workers from exterior falls promulgated under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-678, plaintiff argues that CBI had an affirmative duty to provide a safe work place and to comply with the Occupational Safety and Health Administration's standards.[20] Neither the allegations in plaintiff's amended complaint, nor the arguments presented in response to CBI's motion for summary

---

[19] Amended Complaint and Jury Demand, Docket Entry No. 3, pp. 2 and 5 ¶¶ 26-30.

[20] Id. at p. 7.

judgment, cite any section of the Charter of the OAS that either imposes or recognizes occupational safety and health standards as a matter of international law.

The OAS was created by a Charter signed and ratified by the United States and other Member States, including Trinidad and Tobago, West Indies.  <u>See</u> Charter of the Organization of American States, as amended, available at [www.oas.org](www.oas.org).  Article 31 of the OAS Charter provides

> Inter-American cooperation for integral development is the common and joint responsibility of the Member States, within the framework of the democratic principles and the institutions of the inter-American system. It should include the economic, social, educational, cultural, scientific, and technological fields, support the achievement of national objectives of the Member States, and respect the priorities established by each country in its development plans, without political ties or conditions.

<u>Id.</u> at Article 31.  Chapter VIII of the OAS Charter provides

> The Organization of American States accomplishes its purposes by means of:
>
> a)   The General Assembly;
>
> b)   The Meeting of Consultation of Ministers of Foreign Affairs;
>
> c)   The Councils;
>
> d)   The Inter-American Juridical Committee;
>
> e)   The Inter-American Commission on Human Rights;
>
> f)   The General Secretariat;
>
> g)   The Specialized Conferences; and
>
> h)   The Specialized Organizations.

<u>Id.</u> at Article 53.

As plaintiff recognizes in his amended complaint, the OAS has "adopted and laid down principles of labor relations, standards and fair working conditions"[21] (emphasis added). The OAS Charter neither mentions specific occupational health and safety standards nor imposes such standards as a matter of international law. Moreover, plaintiff does not argue and the court does not find any provision in the OAS Charter that extends the principles that it embodies to private actors such as the individual plaintiff or the corporate defendant named in this action. Even assuming that the OAS Charter did extend recognized principles to private actors, plaintiff does not argue and the court does not find that the Charter creates obligations enforceable in federal court. See Hanoch Tel-Oren v. Libyan Arab Republic, 517 F.Supp. 542, 546 (D.C.D.C. 1981), aff'd, 726 F.2d 774 (D.C. Cir.), cert. denied, 105 S.Ct. 1354 (1985) (citing Foster v. Neilson, 27 U.S. 253, 7 L.Ed. 415 (1829) (treaties must provide expressly for a private right of action before an individual can assert a claim thereunder in federal court)). Nor does plaintiff argue or cite any authority in support of his claim that the operation of a construction site absent a safety engineer violates the law of nations as recognized at common law. See Sosa, 124 S.Ct. at 2755. Accordingly, the court concludes that plaintiff has failed to present any evidence showing that his claims are cognizable under the ATS. See Sosa, 124 S.Ct. at 2767 (rejecting Mexican national's assertion that

---

[21] Id. at p. 2 ¶ 7.

international law sufficient to support an ATS claim was established by either the Universal Declaration of Human Rights, G.A. Res. 217A(III), U.N. Doc. A/810 (1948), or article nine of the International Covenant on Civil and Political Rights, Dec. 19, 1999, 999 U.N.T.S. 171, because plaintiff failed to show that either document was self-executing, i.e., that either document created a private right of action). See also In re Alien Children Ed. Litigation, 501 F.Supp. 544, 590 (S.D. Tex. 1980) (Article 47 of O.A.S. Charter not self-executing); Filartiga v. Pena-Irala, 630 F.2d 876, 882 n.9 (2d Cir. 1980) (O.A.S. Charter not self-executing); Doe v. Plyler, 628 F.2d 448, 453 (5th Cir. 1980) (Protocol of Buenos Aires adopted pursuant to OAS Charter not self-executing).

### III. Conclusions and Order

Because plaintiff's claims for negligence and negligence per se are not cognizable under the ATS, and because the court concludes that plaintiff's claims are barred by the Texas Statute of Limitations, CBI Company Ltd.'s (Improperly Named as Chicago Bridge and Iron) Motion for Summary Judgment (Docket Entry No. 13) is **GRANTED**. CBI Company Ltd.'s (Improperly Named as Chicago Bridge and Iron) Motion to Withdraw or Amend Deemed Admissions (Docket Entry No. 16) is **MOOT**.

**SIGNED** at Houston, Texas, on this 27th day of March, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE